UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| S.C., | CASE NO. 1:23-cv-00871 |
| Plaintiff, | OPINION & ORDER |
| | [Resolving Doc. 174] |
| v. | |
| WYNDHAM HOTELS AND RESORTS, INC., et al., | |
| Defendants. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this hotel sex trafficking case, Plaintiff S.C. sues eight Defendants affiliated with four different hotels for violations of the Trafficking Victims Protection Reauthorization Act (TVPRA).

Plaintiff has filed a request with the Judicial Panel on Multidistrict Litigation (JPML) to centralize her case with other hotel sex trafficking cases across the country.[1] S.C. asks the Court to stay all proceedings while the JPML considers her request.[2] Defendants oppose a stay.[3]

Because a stay would delay efficient resolution of this case, the Court **DENIES** Plaintiff's motion to stay.

## I. LEGAL STANDARD

Courts have the inherent power to stay cases in response to parallel proceedings elsewhere.[4] When there is a transfer motion pending before the JPML, courts can, but are

---

[1] *In re: Hotel Industry Sex Trafficking Litigation (No. II)*, MDL No. 3104 (J.P.M.L.).
[2] Doc. 174.
[3] Doc. 180.
[4] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Case No. 1:23-cv-00871
GWIN, J.

not required to, stay proceedings under this inherent power.[5] When deciding whether to issue such a stay, courts weigh three factors: (1) prejudice to the non-moving party; (2) hardship to the moving party absent a stay; and (3) judicial economy and efficiency.[6]

## II. DISCUSSION

While a pending transfer motion before the JPML might often justify a stay, the Court finds that a stay is not appropriate here.

Plaintiff S.C.'s argument in favor of a stay largely depends on the prediction that the JPML will centralize her case with others. In Plaintiff's eyes, centralization is all but inevitable, so moving forward with Plaintiff's case now would pointlessly duplicate efforts and expose the parties to potentially conflicting rulings.[7]

But centralization seems unlikely. Under 28 U.S.C. § 1407(a), the JPML centralizes actions only if those actions involve "one or more common questions of fact," and if centralization would serve "the convenience of parties and witnesses" as well as "promote the just and efficient conduct of such actions."[8]

As S.C.'s own case demonstrates, this case presents only few common factual questions with other sex trafficking cases. According to S.C.'s complaint, she was trafficked at four different hotels: a Days Inn, a Comfort Inn, a Crowne Plaza, and a Red Roof Inn.[9] Two Defendants (Wyndham Hotels and Resorts, Inc. and Days Inns Worldwide, Inc.) are associated with the Days Inn.[10] One Defendant (Choice Hotels International, Inc.) is

---

[5] J.P.M.L. Rule 2.1(d).
[6] *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997); *see also Hagwood v. Gen. Elec. Co.*, No. 2:07-cv-0548, 2007 WL 4287655, at *1 (S.D. Ohio Dec. 4, 2007).
[7] Doc. 174 at 3, 6.
[8] *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, --- F. Supp. 3d ---, MDL No. 3084, 2024 WL 41889, at *1 (J.P.M.L. Jan. 4, 2024) (quoting 28 U.S.C. § 1407(a)).
[9] Doc. 79 at ¶ 54.
[10] *Id.* at ¶¶ 21–25.

Case No. 1:23-cv-00871
GWIN, J.

associated with the Comfort Inn.[11] Three Defendants (Six Continents Hotels Inc., Holiday Hospitality Franchising, LLC, and Crowne Plaza LLC) are associated with the Crowne Plaza.[12] The remaining two Defendants (Red Roof Inns, Inc. and Red Roof Franchising, LLC) are associated with the Red Roof Inn.[13]

There are no allegations that these four groups of Defendants ever cooperated with each other or even communicated about S.C.'s alleged trafficking. Even within the same case, the only common factual connection between the four sets of Defendants is Plaintiff and her traffickers.

Nothing suggests that S.C.'s traffickers are involved in any of the multitude of sex trafficking cases filed around the country.

Zooming out to a broader perspective only emphasizes the lack of common factual questions. The hotel sex trafficking lawsuits that Plaintiff proposes to centralize largely involve different hotels in different parts of the country and different plaintiffs preyed on by different sex trafficking ventures. In fact, the lawsuits proposed to be centralized involve fifty different defendants, including hotel parent companies, franchisors, franchisees, and other related corporate entities.[14] And there are over fifty different plaintiffs involved.[15]

Viewing Plaintiff's centralization request through the lens of a TVPRA claim further reinforces the lack of commonality. To make a TVPRA claim, a plaintiff must show that a defendant (1) knowingly benefited from (2) participating in a venture that (3) the defendant

---

[11] Doc. 79 at ¶¶ 26–27.
[12] *Id.* at ¶¶ 28–31.
[13] *Id.* at ¶¶ 32–37.
[14] Doc. 180, App. A.
[15] Doc. 180, App. B.

- 3 -

Case No. 1:23-cv-00871
GWIN, J.

knew or should have known was engaged in sex trafficking.[16]  Each of these three elements is specific to the particular plaintiff and sex trafficking venture involved in a case.

Although there might be common factual questions about how much a given hotel group generally knows about sex trafficking problems in their hotels, such general knowledge is only minimally relevant to TVPRA claims.  General knowledge can provide background context on whether a defendant should have recognized signs of sex trafficking, but ultimately it will be individual signs of sex trafficking that matter the most.

In any case, even general knowledge will only be common between defendants in the same hotel group—the defendants in the proposed multidistrict litigation represent many different hotel groups.[17]

Because individualized fact issues will predominate, centralization in these hotel sex trafficking cases would not promote judicial efficiency.[18]  Due to the many individualized fact issues, very little discovery will overlap between the different cases.  Nor will there be many issues that a transferee court can resolve across multiple cases with a single order.

Further, the hotel sex trafficking cases across the country are likely all in different procedural postures.  Some, like S.C.'s case, are close to trial.[19]  Others were just filed recently.[20]  Centralizing these hotel sex trafficking cases now would scramble the case management plans for cases that are further along.

Finally, the fact that so many different parties and witnesses are involved means that centralization would not be convenient.

---

[16] *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (citing 18 U.S.C. § 1595(a)).
[17] Doc. 180, App. A.
[18] *In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L 2021) (denying centralization when individualized causation issues predominated).
[19] *See, e.g.*, *W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-05263 (N.D. Ga.).
[20] *See, e.g.*, *Doe v. ESA P Portfolio LLC*, No. 3:23-cv-06038 (W.D. Wash.).

Case No. 1:23-cv-00871
GWIN, J.

These are not just this Court's opinions.  The JPML has already denied a request to centralize hotel sex trafficking cases for many of the reasons the Court explained above.[21]  In rejecting centralization, the JPML held:

> The vast majority of actions involve different hotels . . . .  [E]ach action involves different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods.  Thus, unique issues concerning each plaintiff's sex trafficking allegations predominate in these actions.[22]

The circumstances now do not appear to have changed since the JPML last denied centralization.

Since the JPML is unlikely to centralize the hotel sex trafficking cases, there are few benefits to staying Plaintiff S.C.'s case.[23]  This case has already allowed significant time for discovery.  Given the individual nature of each sex trafficking case, any multidistrict joint discovery would do little to further this case's resolution.

A stay would only avoid duplicating pretrial efforts and conflicting rulings if the hotel sex trafficking cases are centralized and only if centralized discovery would greatly lessen individual case discovery.  Neither seems true.  If the JPML denies centralization, as seems likely, the parties here will not realize those benefits.

In fact, staying this case would run counter to judicial efficiency.  Trial in this case is less than four months away.[24]  A stay—even a brief one lasting no more than a couple months—would necessarily delay trial and delay the expeditious resolution of Plaintiff S.C.'s claims.

---

[21] *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020).
[22] *Id.* at 1355–56.
[23] Even if the JPML were to grant centralization, the parties' efforts S.C.'s case would not be wasted.  The discovery gathered could be used in the centralized proceedings.
[24] Doc. 109.

- 5 -

Case No. 1:23-cv-00871
GWIN, J.

### III. CONCLUSION

For these reasons, the Court **DENIES** Plaintiff S.C.'s motion to stay.

IT IS SO ORDERED.

Dated: January 27, 2024  　　　　　　　*s/　　James S. Gwin*
　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE