UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| S.C. | CASE NO. 1:23-cv-00871 |
| Plaintiff, | OPINION & ORDER |
|  | [Resolving Doc. 303] |
| v. |  |
| WYNDHAM HOTELS AND RESORTS, INC., et al., |  |
| Defendant. |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

For nearly a decade, Plaintiff S.C. says individuals sex trafficked her at various Cleveland-area hotels and motels. After police arrested her on prostitution charges and S.C. separated from her traffickers, S.C. filed this lawsuit against a number of hotel franchising companies and their corporate parents (Defendants).[1] With her complaint, S.C. alleged that Defendants participated in her trafficking even though S.C.'s trafficking took place at hotels that Defendants did not own and did not operate.

Instead, non-defendant hotel owners ran and supervised the hotels. These non-defendant hotel owners (franchisees) had earlier entered individual franchise agreements with the Defendant franchising companies (franchisors). The franchise agreements gave the franchisees responsibility for owning and running the hotels. The franchise agreements also required the franchisees to follow franchisor brand standards.

---

[1] Defendants are Wyndham Hotels and Resorts, Inc.; Days Inn Worldwide, Inc.; Choice Hotels International, Inc.; Red Roof Inns, Inc.; and Red Roof Franchising, LLC. Earlier, Plaintiff S.C. also sued Six Continents Hotels, Inc.; Holiday Hospitality Franchising, LLC; and Crowne Plaza, LLC. Six Continents and Holiday Hospitality settled with S.C., and the Court dismissed Crowne Plaza for lack of personal jurisdiction, so those three parties are not at issue in this Order. Docs. 273, 300.

Case No. 1:23-cv-00871
GWIN, J.

The Defendant franchisors owned the hotel trademarks and licensed those trademarks to the franchisees.

S.C. sued Defendants under the Trafficking Victims Protection Reauthorization Act (Trafficking Victims Act). The Trafficking Victims Act allows S.C. to sue her traffickers as well as those who knowingly participated in the venture that trafficked S.C.

In this case, Plaintiff S.C. sued the franchisors and the franchisors' corporate parents. Plaintiff S.C. did not sue the franchisees that actually operated the hotels where she was trafficked. S.C. did not sue the individuals who trafficked her.

To succeed in her claims against the franchisors and corporate parents, S.C. needed to prove the franchisors' and corporate parents' participation and knowledge.[2]

The franchisors and corporate parents, though, are separate from the franchisees who owned and ran the hotels where the alleged trafficking took place. The franchisors and corporate parents are also more distant from the trafficking than the franchisees.

Throughout this litigation, Plaintiff S.C. blurred the lines between franchisee, franchisor, and corporate parent. For example, Plaintiff acknowledges that "Lakewood Days Inn by Wyndham are Wyndham-branded [franchisee] properties."[3] But then Plaintiff alleges "Wyndham employees worked throughout the Lakewood Days Inn by Wyndham. . . . Wyndham is the principal with control over nearly every element of operations at the Lakewood Days Inn by Wyndham."[4]

With conclusory allegations, S.C. equates the employees of the franchisee—a separate corporate entity---with the Wyndham franchisor entity's employees.

---

[2] 18 U.S.C. § 1595(a).
[3] Doc. 79 at ¶ 25a.
[4] *Id.* at ¶ 25b.

- 2 -

Case No. 1:23-cv-00871
GWIN, J.

S.C.'s liability theories each attempted to attribute the franchisees' knowledge and actions to the Defendant franchisors and corporate parents. But discovery did not reveal any facts that supported attributing fault from the franchisees to Defendants. So, the Court granted summary judgment to Defendants.

Plaintiff S.C. then filed a motion to modify the Court's judgment under Federal Rule of Civil Procedure 59(e). In her motion, S.C. makes three arguments: (1) that the Court wrongly analyzed the Trafficking Victims Act claim elements for S.C.'s direct liability claims; (2) that the Court failed to acknowledge evidence showing that the franchisee hotels were Defendants' agents; and (3) that the Court improperly made credibility determinations about S.C.'s testimony.

None of these three arguments grapple with the fundamental challenge stemming from S.C.'s decision to sue the franchisors and corporate parents instead of the franchisees. Moreover, all three arguments misunderstand the Court's summary judgment order and so fail to meet the high bar for Rule 59(e) motions. The Court DENIES Plaintiff S.C.'s motion.

## I. BACKGROUND

The Court earlier gave a detailed factual background in its summary judgment order. As such, the Court does not fully recount the case's background here.

For this Order's purposes, it is only necessary to recall that Plaintiff S.C. alleges that she was trafficked at a Days Inn, a Comfort Inn, and a Red Roof Inn, and that Defendants are the franchisors and corporate parents associated with these hotels. Defendants operated none of the hotels used in S.C.'s trafficking.

Case No. 1:23-cv-00871
GWIN, J.

## II. LEGAL STANDARD

Four circumstances justify granting a Rule 59(e) motion: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[5] Here, Plaintiff S.C. argues clear error and manifest injustice.[6]

## III. DISCUSSION

### A. Direct Liability

A successful Trafficking Victims Act claim against a non-trafficker defendant—known as a beneficiary claim—requires a plaintiff to show that the beneficiary-claim defendant (1) knowingly benefited from (2) participation in a venture that (3) the defendant knew or should have known violated a Trafficking Victims Act criminal provision.[7]

With her Rule 59(e) motion, Plaintiff S.C. challenges the Court's previous analysis of the participation and knowledge elements.

#### 1. Participation

In its summary judgment order, the Court held that Plaintiff S.C.'s direct liability claim against Defendants primarily faltered on the "participation in a venture" element.[8]

S.C. argues that the Court erred in its decision in reaching this conclusion. But S.C. misreads the Court's summary judgment order. Properly understood, the Court's summary judgment order does not have S.C.'s claimed mistakes.

To begin, S.C. says the Court was wrong to conclude there could be no direct liability when Defendants lacked direct contact. S.C. says that there need not be direct contact

---

[5] *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citation omitted).
[6] *See* Doc. 303.
[7] 18 U.S.C. § 1595(a); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019).
[8] Doc. 301 at 6.

- 4 -

Case No. 1:23-cv-00871
GWIN, J.

between Defendants and S.C. Rather, S.C. argues she only needed to "connect the dots" between Defendants and S.C.[9]

However, the Court did not give summary judgment because Defendants had no contact with *Plaintiff S.C.* The Court gave summary judgment because Defendants had no contact with *S.C.'s traffickers*.

A beneficiary claim requires "participation in a venture." As the Court explained in its summary judgment order, there can be no participation in a venture unless there is some "interaction with that venture."[10] S.C. did not present evidence that Defendants interacted with S.C.'s traffickers. Nor has S.C. explained how Defendants could have been part of a venture with S.C.'s traffickers without interaction with the traffickers.

Instead, Plaintiff S.C. suggests that Defendants took part and interacted with her traffickers by forming "continuous business relationships" and "tacit agreements" with the traffickers.[11]

Plaintiff S.C.'s argument conflates the franchisee hotels with Defendants. It was the franchisee hotels, not the Defendants, who rented rooms and provided hotel services to S.C.'s traffickers.[12] So, if any business relationship or tacit agreement existed, such relationship or agreement was between the franchisees and the traffickers, not between the Defendant franchising companies and the traffickers.

On a direct liability theory, Plaintiff S.C. cannot attribute the non-party hotel franchisees' actions to Defendants.[13]

---

[9] Doc. 303 at 8–9 (collecting cases).
[10] Doc. 301 at 7.
[11] Doc. 303 at 8.
[12] Docs. 181-3 to -7.
[13] Direct liability exists when a defendant itself has done wrong. It is vicarious liability that allows plaintiffs to attribute a third-party's actions to a defendant.

- 5 -

Case No. 1:23-cv-00871
GWIN, J.

As a second argument, S.C. says that, by requiring direct contact, the Court reads out the "should have known" language from the Trafficking Victims Act's beneficiary provision.[14] But the Court held that lack of direct contact showed a lack of *participation*.[15] The Court did not rule that there needs to be direct contact to show that a defendant *knew or should have known* about the venture's sex trafficking violations.

Nothing in the Court's summary judgment order should be interpreted as limiting beneficiary liability against defendants who should have known about a plaintiff's trafficking and who took part in a venture with that knowledge.

Perhaps recognizing that it would be challenging to show Defendants took part in a venture with S.C.'s traffickers, S.C. pointed to another potential venture in her summary judgment arguments. According to S.C., Defendants' participation in the hotel franchising venture between Defendants and the franchisee hotels is enough to satisfy the participation element.[16]

In its summary judgment order, the Court explained the problem with this argument: plaintiffs can satisfy the Trafficking Victims Act's participation element only if they show a defendant's participation in a "sex trafficking venture."[17]

Defendant participation in a franchising venture alone is not enough. And there was no evidence the hotel franchising ventures were sex trafficking ventures. So, Defendants' participation in those franchising ventures did not support S.C.'s beneficiary claims.[18]

---

[14] Doc. 303 at 7.
[15] Doc. 301 at 7.
[16] Doc. 286 at 10–13.
[17] Doc. 301 at 7 & n.41.
[18] *Id.* at 7.

- 6 -

Case No. 1:23-cv-00871
GWIN, J.

Plaintiff S.C. now says this was clear error because courts have found that a Trafficking Victims Act venture does not need to be primarily focused on sex trafficking.[19]

S.C. misunderstands the Court's summary judgment order. The Court did not require sex trafficking be the primary purpose of the "sex trafficking venture." Instead, the Court defined "sex trafficking venture" as a venture that committed a Trafficking Victims Act violation, regardless of the venture's primary purpose.[20]

In reaching that conclusion, the Court relied on the Trafficking Victims Act's text. The Act requires a venture that the defendant "knew or should have known has engaged in an act in violation of this chapter [*i.e.*, in violation of the Trafficking Victims Act]."[21] Because a party cannot know about something that never happened, it follows from this knowledge requirement that the venture must violate the Act.

The Seventh Circuit's *G.G. v. Salesforce.com, Inc.*[22] decision also supports the Court's statutory interpretation. Although Plaintiff S.C. attempts to use *Salesforce* as support for her Rule 59(e) argument, S.C. takes that decision's language out of context.

S.C. points to *Salesforce*'s holding that "the relevant venture under [the Trafficking Victims Act] need not be specifically a sex trafficking venture."[23] In so holding, though, the *Salesforce* court addressed and rejected the argument that a Trafficking Victims Act venture is "narrowly [] limited to a venture that is *primarily* a sex-trafficking venture.[24] But, the *Salesforce* court also explained, the Act still "requir[es] the venture's criminality" because the

---

[19] Doc. 303 at 5–6.
[20] Doc. 301 at 7 n.41.
[21] *Id.* (quoting 18 U.S.C. § 1595(a)).
[22] 76 F.4th 544 (7th Cir. 2023).
[23] *Id.* at 554 (internal quotation marks and citations omitted).
[24] *Id.* (emphasis added); *see also id.* (ventures include "business[es] whose *primary* focus is not on sex trafficking") (emphasis added).

- 7 -

Case No. 1:23-cv-00871
GWIN, J.

Act describes the relevant "venture" as one "which . . . has engaged in an act in violation of this chapter."[25]

Put differently, *Salesforce* held that a Trafficking Victims Act venture's primary purpose does not have to be sex trafficking, but the venture still needs to commit a sex trafficking violation. In its summary judgment order, the Court defined "sex trafficking venture" consistent with *Salesforce*'s holding.

To be clear, the Court did not require that a *defendant* participate in a sex trafficking act to face beneficiary liability under the Trafficking Victims Act. Rather the *venture* in which the defendant participated must have performed a sex trafficking act. The venture cannot be totally innocent of a sex trafficking act for there to be liability.

Finally, S.C. suggests that the Court committed a clear error by limiting the relevant Trafficking Victims Act violation to a "sex trafficking act."[26] S.C. says that this excludes conduct that the Trafficking Victims Act explicitly makes criminal, such as knowingly harboring or advertising sex trafficking.[27]

However, when the Court referred to "sex trafficking act," it used the phrase "such as."[28] By doing so, the Court made clear that sex trafficking acts are just one example of a relevant Trafficking Victims Act violation. The Court did not limit Trafficking Victims Act violations to sex trafficking alone. The Trafficking Victims Act also covers other forms of human trafficking and forced labor.[29] The Court specifically identified sex trafficking because this case involves sex trafficking.

---

[25] *Salesforce,* 76 F.4th at 554 (quoting 18 U.S.C. § 1595(a)).
[26] Doc. 303 at 6–7.
[27] *Id.* (quoting 18 U.S.C. § 1591(a)(1)).
[28] Doc. 301 at 7 n.41.
[29] *See, e.g.,* 18 U.S.C. §§ 1589, 1590.

- 8 -

Case No. 1:23-cv-00871
GWIN, J.

What is more, the Trafficking Victims Act expressly defines criminal sex trafficking to include harboring or advertising.[30] In context, the summary judgment order's use of the phrase, "sex trafficking act," refers to the Act's statutory definition, not some unspecified, narrower definition. So, the Court considered exactly the type of behavior that S.C. claims the Court excluded.

Ultimately, Plaintiff S.C. gave no evidence showing that the hotel franchising ventures committed any criminal sex trafficking violations. Perhaps S.C. could have given evidence if she had taken discovery from the franchisee hotels. But S.C. did not.[31] Instead, S.C. focused her discovery on Defendants, entities that were multiple steps removed from S.C.'s trafficking.

For the reasons above, the Court did not commit clear error when it found that the evidentiary record failed to create a triable jury issue on the Trafficking Victims Act's participation element.

---

[30] 18 U.S.C. § 1591(a).
[31] Plaintiff S.C. was aware of the summary judgment deadlines in this case and therefore bears responsibility for failing to take relevant discovery in time to oppose summary judgment. That is especially so because the Court granted multiple summary judgment extensions.

When the Court initially set deadlines at the August 8, 2023 case management conference, S.C.'s summary judgment opposition was due by December 18, 2023. Doc. 109. On November 17, 2023, the parties asked for a 60-day summary judgment extension. Doc. 143. The Court granted that request and informed the parties that it was not inclined to grant further extensions. Non-Doc. Order (Nov. 29, 2023).

Nonetheless, on January 24, 2024, S.C. moved for a further extension, supplementing that motion twice. Docs. 178, 185, 197. The Court again granted an extension, with S.C.'s summary judgment opposition now being due February 26, 2024. Doc. 206. And the Court again warned S.C. not to expect further extensions. *Id.*

Yet, after Defendants filed their summary judgment motions, S.C. moved a third time for an extension, this time under Federal Rule of Civil Procedure 56(d). Doc. 244. In her Rule 56(d) motion, S.C. argued that she needed more time to take discovery from Defendants but did not indicate that she wanted to take any discovery from the franchisee hotels. *Id.* The Court denied S.C.'s extension request. Doc. 258. However, the Court permitted her to submit a supplement, by March 12, 2024, addressing any additional discovery taken after S.C. filed her opposition. *Id.* The Court later extended the supplement deadline to March 14, 2024. Doc. 261.

On February 26, 2024, S.C. filed her summary judgment opposition. Doc. 263. The Court struck S.C.'s original opposition for exceeding page limits but gave S.C. permission file an amended opposition. Non-Doc. Order (Mar. 7, 2024). The Court also allowed S.C. to include arguments in her amended opposition that she had accidentally omitted from her original opposition. *Id.* On March 14, 2024, S.C. filed her revised summary judgment opposition. Doc. 286. On March 15, 2024, the day after supplements were due, S.C. filed her supplement.

So, all told, S.C. received approximately three additional months from the Court's original deadline to file her summary judgment briefing.

- 9 -

Case No. 1:23-cv-00871
GWIN, J.

### 2. Knowledge

The Court granted summary judgment to Defendants on Plaintiff S.C.'s direct liability claims mainly based on the Trafficking Victims Act's participation element.[32]

But the Court also observed that S.C. had failed to give evidence showing Defendants' knowledge. Although S.C. showed that Defendants had general knowledge about sex trafficking within the hotel industry, the record contained "no documents or testimony showing that the franchisee hotels ever told the Defendant Franchisors about sex trafficking problems, about S.C. being sex trafficked, or even any broader prostitution issues" at the franchisee hotels themselves.[33]

As the Court has repeatedly held throughout this litigation, general knowledge about industry-wide sex trafficking problems is not enough to establish the Trafficking Victims Act's knowledge element.[34]

That is because the knowledge element is specific to the venture that trafficked S.C.[35] While general knowledge gives background to the knowledge issue, that general knowledge must combine with evidence showing that a defendant received more specific information. This specific information can be either information that expressly reveals the venture's trafficking activities (so the defendant knew), or information that should have alerted the defendant to the particular venture's trafficking (so the defendant should have known). A

---

[32] Doc. 301 at 6 ("This claim falters on the Trafficking Victims Act's participation requirement.").
[33] *Id.* at 4.
[34] Doc. 182 at 2.
[35] *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022) ("Plaintiffs' evidence suggests, at most, that Wales should have known of labor abuses in the Thai shrimp industry generally. Sweeping generalities about the Thai shrimp industry are too attenuated to support an inference that Wales knew or should have known of the specifically alleged [Trafficking Victims Act] violations . . . ."), *cert. denied* 143 S. Ct. 491 (2022); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("However, to conclude that franchisors like Wyndham, Howard Johnson, Inc., and Choice Hotels are liable under the [Trafficking Victims Act] simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'").

Case No. 1:23-cv-00871
GWIN, J.

plaintiff can never satisfy the knowledge element without at least some evidence that the defendant received such specific information.

Because the Court found that there was no evidence showing that Defendants "received [] specific notice of S.C.'s trafficking," Plaintiff S.C. could not satisfy the Trafficking Victims Act's "knew or should have known" element.[36]

S.C. challenges the Court's knowledge finding. S.C. claims that there was evidence Defendants "had actual knowledge/notice that the plaintiff or others similarly situated were being sex trafficked at the chain franchised hotels."[37] S.C. says it was a manifest injustice for the Court to ignore that evidence.

However, S.C. does not point to any new or overlooked evidence showing that Defendants received information suggesting S.C.'s trafficking. Rather, she relies upon general knowledge evidence.[38]

Only S.C.'s testimony about the "red flags" that S.C. exhibited when she was being trafficked at the franchisee hotels is specific enough to potentially satisfy the Trafficking Victims Act's knowledge element.[39] While these red flags occurred at the franchisee hotels, S.C. does not show the Defendant franchisors or corporate parents received notice of these red flags. The franchisees may have seen those red flags, but Defendants did not.

The evidentiary record does not show that the franchisees communicated these red flags to Defendants. And on a direct liability theory, S.C. cannot attribute knowledge about these red flags from the franchisees to Defendants.

---

[36] Doc. 301 at 7.
[37] Doc. 303 at 9 (cleaned up).
[38] *Id.* at 15 ("Defendants knew that *similarly situated individuals* were being trafficked at their Chain Hotels . . . .") (emphasis altered).
[39] *E.g.*, Doc. 286-6 at 180:9–181:3.

- 11 -

Case No. 1:23-cv-00871
GWIN, J.

As a final effort, S.C. argues that she has produced enough evidence that a jury could find Defendants had deliberately ignored S.C.'s sex trafficking.[40]

In essence, S.C. argues that, because Defendants knew generally that sex trafficking was a problem in the hotel industry, Defendants should have done more to combat that general sex trafficking problem.[41] In S.C.'s view, Defendants failed to implement sufficiently robust reporting requirements and anti-trafficking standards.

S.C. says the Court should infer from this failure that Defendants were purposefully shielding themselves from any potential knowledge about specific sex trafficking incidents.[42] And this, according to S.C., is enough to satisfy the required knowledge element.[43]

Effectively, S.C. asks the Court to hold Defendants responsible for their failure to take more rigorous action against generally known issues of sex trafficking in the hotel industry. But courts have uniformly held that the Trafficking Victims Act does not impose an affirmative duty to stop trafficking.[44] If the Court accepted S.C.'s argument, the Court would be reading something like an affirmative duty or a guarantee into the Act's knowledge element. Therefore, the Court rejects this argument.

Plaintiff S.C. has not shown that the Court's knowledge analysis resulted in a manifest injustice.

### B. Vicarious Liability

Plaintiff S.C. also argues that the Court overlooked evidence sufficient to show that Defendants should be vicariously liable for their franchisee hotels. S.C. says that this

---

[40] Doc. 303 at 14–15.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking.") (collecting cases).

Case No. 1:23-cv-00871
GWIN, J.

evidence creates a triable jury question about whether Defendants and the franchisee hotels were in an agency relationship.[45]

Contrary to S.C.'s suggestion, the Court did not find that Defendants lacked any control over the franchisee hotels. The Court acknowledged that the franchisor Defendants had "some level of quality control over the franchisee hotels by setting certain standards."[46] The reason S.C.'s actual agency theory failed is because, while Defendants had *some* control, Defendants lacked *relevant* control.[47]

Not just any control creates an agency relationship. For control to be agency-creating, that control must be (1) interim, and (2) extend over daily operations.[48]

The Court found that Defendants' control over the franchisee hotels did not show agency because Defendants' control was either not interim or did not extend over daily operations.[49] The supposedly overlooked evidence that S.C. raises in her Rule 59(e) motion suffers from the same defects.[50]

In fact, some of S.C.'s Rule 59(e) evidence does not show control at all. For example, by providing training and marketing, the franchisor Defendants were offering services to their franchisees, not controlling their franchisees.[51] And Defendants do not meaningfully control franchisee hotels by telling the franchisees to follow federal law—something the franchisees must already do.

---

[45] Doc. 303 at 15–18.
[46] Doc. 301 at 11.
[47] *Id.* at 11–12 (evidence showed control over "architectural and construction design, interior design, and required amenities," not over "day-to-day operations").
[48] Restatement (Third) Of Agency § 1.01 cmt. f(1) ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."); *Puente v. Garcia*, No. C.A. L-86-134, 1986 WL 14372, at *2 (Ohio Ct. App. Dec. 12, 1986) ("If the franchisor has no power over the daily operations of the business, so as to vest the franchisor with control within the definition of agency, the franchisor cannot be held vicariously liable for the negligence of a franchisee.").
[49] Doc. 301 at 11–12.
[50] Doc. 303 at 16–17.
[51] *Barrett-O'Neill v. Lalo, LLC*, No. 2:14-cv-194, 2014 WL 3895679, at *4 (S.D. Ohio Aug. 8, 2014).

Case No. 1:23-cv-00871
GWIN, J.

The closest that S.C. gets to showing interim control over daily operations is that some franchisees were required to use their franchisors' online booking platforms.[52] This requirement touches on some daily room rental operations.

However, booking platforms are just conduits for customers to make reservations with the franchisee hotels. Online booking platforms do not tell franchisee hotels to whom to rent. The online booking platforms work similarly to online marketplaces that connect merchants with customers, like Amazon. In both cases, the hotels and merchants are doing business directly with a customer through another party's platform.[53]

Because S.C. does not show that the Court's agency analysis was wrong, S.C. has not demonstrated manifest injustice.

### C. Credibility

Lastly, Plaintiff S.C. claims that the Court caused manifest injustice by improperly making a credibility determination about S.C.'s testimony.[54] S.C. misreads the Court's summary judgment order.

True, in the summary judgment order's background, the Court identified some inconsistencies between S.C.'s complaint and her deposition testimony.[55] The Court highlighted these inconsistencies to provide context to readers. That way, readers could understand how S.C. initially framed this case and how the facts subsequently developed over the course of discovery.

---

[52] Doc. 303 at 16.
[53] If the rule were otherwise, it seems that all online booking platforms—of which there are many—would become principals.
[54] Doc. 303 at 10–13.
[55] Doc. 301 at 2–4.

Case No. 1:23-cv-00871
GWIN, J.

The Court did not, however, judge S.C.'s credibility based on these inconsistencies. That is, at no point in its summary judgment order did the Court discount any of S.C.'s testimony due to concerns about S.C.'s credibility.

More consequentially, S.C.'s testimony was unimportant to granting summary judgment.

On direct liability, the Court granted summary judgment to Defendants over Defendant franchisors' lack of participation or knowledge.[56] S.C. did not testify to anything Defendants did or knew,[57] nor would S.C. have had personal knowledge about Defendants because she never interacted with Defendants.

On S.C.'s actual agency and joint employer theories, the Court ruled for Defendants based on the contractual relationship between Defendants and their franchisee hotels. The Court's analysis depended on the contracts and franchise documents between Defendants and the franchisee hotels.[58] S.C.'s testimony had no role.

As for S.C.'s joint venture theory, the Court granted summary judgment based on litigation posture.[59] Again, S.C.'s testimony was not relevant to that issue.

The only theory where S.C.'s testimony was relevant was S.C.'s apparent agency theory. And there, the Court affirmatively credited S.C.'s testimony that S.C. never participated in the decisions regarding what hotels to use while being trafficked.[60] In fact, it was because the Court credited this testimony that the Court granted summary judgment to Defendants.

---

[56] Doc. 301 at 6–7.
[57] *See* Doc. 286-6.
[58] Doc. 301 at 10–13.
[59] *Id.* at 13.
[60] *Id.* (citing Doc. 286-6 at 396:22–397:14).

Case No. 1:23-cv-00871
GWIN, J.

For these reasons, Plaintiff S.C. has not shown that the Court's discussion of inconsistencies created a manifest injustice.

## IV. CONCLUSION

The gravity of this decision is not lost on the Court. Sex trafficking is a terrible blight on our society, and there is more that can and should be done to combat that scourge. The Court's role is limited, though. The Court applies the law as it is, and the law does not provide remedies for every wrong.

In this case, Plaintiff S.C. did not give enough evidence to go forward with Trafficking Victims Act claims against franchisors or corporate parents. Perhaps S.C. could have shown enough evidence to reach trial against the persons who actually trafficked her or against the franchisee hotels. But that is not the case before the Court. So, the Court DENIES S.C.'s motion.

IT IS SO ORDERED.

Dated: May 15, 2024                    *s/    James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE